IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION


BILLY W. WILLIAMS                                                                                           PLAINTIFF


VS.                                            CASE NO. 05-CV-1098


JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY                                              DEFENDANT

## MEMORANDUM OPINION

Billy Williams has appealed the final decision of the Commissioner of the Social Security Administration, denying his claim for Disability Insurance Benefits and Supplemental Social Security Income. Williams applied for benefits, alleging disability beginning November 1, 1993, stemming from lupus and moderate restrictive lung disease/interstitial lung disease secondary to lupus.[1] He reported joint pain; swelling in the shoulders, hands, wrists, knees, ankles and feet; numbness in the hands, fingers, and feet; and muscle pain and soreness.

The administrative law judge (ALJ) found that Williams's medically determinable severe impairments do not prevent him from performing his past relevant work. Thus, the ALJ concluded that Williams was not disabled within the meaning of the Social Security Act.[2] The

---

[1] Williams drew Social Security Disability from April 26, 1996 until April 2003. Williams's claim was then reviewed, and his future benefits were denied by an administrative law judge in 2003. Williams did not appeal this denial of benefits. On November 20, 2003, Williams then filed a concurrent application for Disability Insurance Benefits and Social Security Income payments. Both claims were denied initially and on reconsideration. Willams's request for a hearing was granted, and the administrative law judge rendered his opinion on July 15, 2005.

[2] One is disabled when he or she is unable to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that is expected to result in death or that has lasted or can be expected to last for a continuous period not less than twelve months.

Appeals Council denied Williams's request for a review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. Williams filed his timely complaint in this Court. Both parties have filed appeal briefs. After careful consideration of the record as a whole, this Court finds that the decision of the Commissioner is supported by substantial evidence.

The Court's function on review is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole. *Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. In assessing the substantiality of the evidence, the Court must consider both evidence that supports and evidence that detracts from the Commissioner's decision. *Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006). This Court may not reverse the Commissioner's decision simply because substantial evidence may support the opposite conclusion. *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006).

In order to receive disability insurance benefits, Williams is required to establish that he is disabled. Although the ALJ found Williams suffered from Lupus, the ALJ found that Williams was not disabled under the Act. The ALJ found that Williams's testimony about the severity of his impairments was not consistent with the medical evidence. The ALJ also found that Williams's testimony was not entirely credible. The ALJ concluded that Williams's impairments did not prevent him from performing his past relevant work as a retail stocker-cashier. The ALJ further concluded that, even if Williams could not resume his past relevant work, there are other jobs in existence in the economy that Williams could perform. Williams

---

20 C.F.R. § 404.4505. To meet this definition, one must have a severe impairment that makes him or her unable to do his or her past relevant work or any other substantial gainful work that exists in the national economy. *Id*.

alleges that the ALJ's decision is not supported by substantial evidence.

Plaintiff was fifty-one years old at the time of the hearing and had completed two or three years of college. After college, Williams ran a delivery truck for Richard Grocery Company for ten years. Then, Williams worked for the Ice Company for five years. At the Ice Company, Williams handled and sold alcoholic beverages. Williams's last employment was with Wal-Mart as a night custodian, and he worked there for three-and-a-half years.

The ALJ found that Williams had severe impairments. The medical evidence is as follows. Williams has been diagnosed with systemic lupus erythematosus. He has also been found to display mild symptoms associated with Reynaud's phenomenon and interstitial lung disease secondary to lupus. As of April 9, 2002, Williams's treating physician, Dr. James H. Abraham, reported Williams's symptoms to be relatively stable. Dr. Abraham noted that as of an earlier follow-up on April 10, 2001, Williams was stable with all lab tests reporting normal with stable pulmonary function testing. After the April 9, 2002 examination, Dr. Abraham opined that Williams's lupus systems appeared very stable on the current drug regimen. Dr. Abraham reported that Williams was tolerating the medications well. Williams stated that he was often having no swelling at all in his feet and that he was not having any significant joint pain.

On April 9, 2003, Dr. Abraham noted that Williams was "about the same" and that Williams had reported only occasionally experiencing a "little pain" in the joints but not on a regular basis. Dr. Abraham reported that Williams's respiratory symptoms were unchanged and there were no reports of new complaints. Upon examination, Williams displayed normal range of motion in all joints without any significant synovitis, tenderness, or swelling. Dr. Abraham opined that Williams was very stable overall and that there was no indication for more aggressive

treatment measures.  On April 10, 2003, Dr. Abraham reported that Williams's pulmonary function studies appeared stable when compared with previous tests and that there was no evidence of any deterioration of lung function.  Dr. Abraham recommended continuing the current medications.

Williams next returned to Dr. Abraham on April 7, 2004, and Williams reported the occurrence of some skin rashes since the first of the year.  Williams, however, stated that as of the date of this visit, his condition regarding the rashes was much improved.  Williams did report a two to three-week occurrence of some numbness in the toes bilaterally, without a tingling or burning sensation.  Dr. Abraham noted some symptoms associated with mild deformity of the left index finger, and he reported that Williams denied any changes in respiratory function.  After the examination, Dr. Abraham reported that Williams's skin was fairly clear with a couple of exceptions.  Dr. Abraham noted swelling around some cuticles on the fingers with dystrophic nail changes in the hands and feet.  Williams displayed mildly decreased breath sounds diffusely and a regular heart rate and rhythm.  Williams was noted to have a swan neck deformity of the left index finger without synovitis.  Dr. Abraham reported that Williams's joints were otherwise normal.  Dr. Abraham recommended the continuation of current medications with an indication that symptoms associated with rash or numbness in the toes would be addressed if any progression of symptoms was noted.

On May 3, 2004, Williams visited another one of his primary care physicians, Dr. David H. Mosley, for follow-up.  Williams reported that he felt better overall and had no chest pain or shortness of breath.  Dr. Mosley reported that there was no joint swelling or signs of increased joint pain.

On January 16, 2005, Williams visited Ouachita County Medical Center Emergency Department with complaints of right-sided chest pain that worsened with coughing. Williams's diagnosis was infiltrate of right lung base, and he was prescribed Albuterol with the use of a family member's updraft machine.

Dr. Mosley saw Williams for follow-up on January 17, 2005, and Williams reported an occasional cough and no shortness of breath. Dr. Mosley diagnosed pneumonia and prescribed medication accordingly. As of January 31, 2005, Williams reported feeling much better with no reported ongoing coughing, no pain, and a denial of shortness of breath. Dr. Mosley reported the pneumonia to be clinically resolved. Dr. Mosley advised Williams to continue his regular medication regimen.

Williams testified that he was presently taking Prednisone, Monopril, and Plaquenil, and that he was experiencing constant pain symptoms. He reported that he took over-the-counter Tylenol for his pain. Williams took Hydrocodone, a prescription pain medication during March 2005, but there is no evidence of the regular or ongoing use of prescription pain medication. There was no evidence regarding any adverse side effects from Williams's current medications.

During a typical day, Williams testified that he spends time watching television. Williams testified that he was unable to perform routine chores related to lawn care but that he was able to cook, wash dishes, perform light housekeeping chores, attend church services weekly, accompany his spouse to the grocery store, and assist his spouse in carrying groceries. Williams testified that he was able to drive an automobile and that he drove a regular distance of three to seven miles.

According to Williams, he can sit for approximately thirty minutes in a continuous period

and is able to stand and/or walk for a "certain length of time." He testified that he had a limited ability to bend. It was Williams's opinion that he was precluded from all work activity because of his exacerbations of lupus and increased swelling of the wrist with work activity.

The ALJ is required to apply a five-step sequential evaluation process to each claim for disability benefits;  (1) whether the claimant has engaged in substantial gainful activity since filing his claim, (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments, (3) whether the impairment(s) meet or equal an impairment in the listings, (4) whether the impairment(s) prevent the claimant from doing past relevant work, and (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience.  *See* 20 C.F.R.404.1520 (2006).

The ALJ is also required to consider all the evidence relating to Williams's subjective complaints including evidence presented by third parties that relates to the following:  (1) Williams's daily activities; (2) the duration, frequency, and intensity of his pain (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions.  *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  *Id*.  A claimant's credibility is primarily a matter for the ALJ to decide. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

The evidence indicates that Williams has been diagnosed with lupus and interstitial lung disease secondary to lupus.  Williams asserts that the ALJ did not "appreciate" Williams's

diagnosis or the nature and effect of Williams's pharmacy regiment. Williams points to his own statements, such as that his feet and toes were numb constantly and had been aching for over a year, as evidence that he is disabled. Williams also testified that he had pain in his shoulders, knees, and hips. Williams turns to his own subjective statements as proof, but these statements are inconsistent with the objective medical evidence. At each yearly visit, Dr. Abraham described Williams's condition as stable. Dr. Abraham also reported that Williams was tolerating the medication well and that the interstitial lung disease was under control and his lungs were not deteriorating. Dr. Abraham noted that Williams expressed that he was having some numbness in his toes, but there is no indication that Williams expressed to Dr. Abraham that he was experiencing constant pain. Williams reported to Dr. Abraham that this numbness did not keep him awake at night. The medical records show that the numbness would come and go and that there would be occasional flareups of the lupus. Dr. Abraham's notes indicate that Williams did not report any notable side effects from his medication. The ALJ noted Williams's short-term use of Hydrocodone prescribed for pain, and that Williams did not report any adverse side effects from this medicine. There is no evidence of any regular or ongoing use of pain medication.

     The ALJ noted that Williams may experience an occasional exacerbation of symptoms but that the medical evidence established that Williams condition is stable. The ALJ did not rely solely on the medical evidence but also considered Williams's reported activities of daily living, including Williams's ability to do laundry, wash dishes, change sheets, iron, take out trash, visit friends and relatives, and drive approximately seven miles. The objective evidence in the record does not support Williams's alleged debilitating symptoms and impairments, such as shortness of

breath, swelling and/or constant pain in his joints, hand cramping, and sleep disturbance. No physician rendered an opinion regarding whether Williams would be able to perform work. Likewise, no physician placed any work-related restrictions on Williams. According to the record, Williams failed to discuss such chronic and debilitating symptoms with his physicians and sought treatment only sporadically during the relevant time period. Williams testified that Dr. Abraham was his primary physician for lupus, but Williams only visited Dr. Abraham once per year or sometimes twice. *See Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (considering time between visits to the doctor and concluding that the time between the visits did not indicate plaintiff was experiencing severe pain). The ALJ concluded that there were numerous inconsistencies and contradictions between Williams's allegations and testimony regarding the severity of his impairments and other evidence in the record.

  The ALJ must make an express credibility determination that explains, based on the record as a whole, why claims were found to be not credible. *Dukes v. Barnhart*, 436 F.3d 923, 928 (2006). Credibility findings are for the ALJ to make when the findings are adequately explained and supported. *Id*. Inconsistencies between a claimant's complaints and the record as a whole are a valid basis from which to make assessments regarding both credibility and the severity of symptoms and/or impairments. *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997). Here, the ALJ adequately explained his findings and the inconsistencies in the record on which he based his decision. While it is clear that Williams suffers from occasional lupus flareups, experiences some discomfort, and perhaps some degree of pain, Williams has not established that he is unable to engage in any and all gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that the fact that working may cause pain or discomfort

does not mandate a finding of disability).  Neither the medical evidence nor the reports concerning Williams's daily activities support his contention of total disability.  Accordingly, this Court concludes that substantial evidence supports the ALJ's conclusion that Williams's subjective complaints were not totally credible.

Here, the ALJ determined that Williams retained the residual functional capacity to lift-carry and/or push-pull up to twenty pounds occasionally and ten pounds frequently, with the ability to stand and/or walk up to six hours in an eight-hour workday (one to two hours in a continuous period) and the ability to sit without significant limitations.  Additionally, because of Williams's history of lupus and resulting limitations, the ALJ concluded that Williams could not perform constant, repetitive-type movements and would be precluded from working outdoors or in temperature extremes.  Because of his restrictive airway disease, Williams would be precluded from exposure to heavy chemicals or other fumes, high humidity, and dust.  Finally, Williams can engage in only occasional stooping, crouching, and/or bending.  Based upon Williams's residual functional capacity, the regulations require the ALJ to determine whether Williams can perform any of his past relevant work.  The ALJ concluded that Williams could perform past relevant work, and Williams asserts that this decision is not supported by substantial evidence.

At this stage of the analysis, an ALJ may use a vocational expert (VE) to assist him in making the decision of whether a claimant can perform past relevant work by providing expert advice.  Williams makes the cursory argument that the ALJ's hypothetical that he proposed to the VE was defective.  Specifically, Williams argues that the hypothetical that the ALJ relied on did not include the effects of lupus or restrictive lung disease, swelling of the knees, hands, ankles, and numbness in feet and toes.

A hypothetical question posed to a VE "need only include those impairments and limitations found credible by the ALJ." *Dukes*, 436 F.3d at 928 (citing *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005)). Additionally, the claimant bears the burden of establishing that he cannot return to past relevant work. *Id*. The factors included in the hypothetical to the VE in this case are supported by the record and are consistent with the ALJ's credibility determination. The ALJ mentioned mild to moderate pain and generally referenced impairments associated with lupus and restrictive lung disease. Thus, this Court finds no error in the hypothetical that the ALJ relied on or in the ALJ's determination of Williams's residual functional capacity and work abilities.

The VE expressed the opinion that an individual of Williams's age who had Williams's residual functional capacity as determined by the ALJ and Williams's other limitations, including moderate pain, could perform the position of a stocker/cashier. Williams had previously been employed as a stocker-cashier of alcoholic beverages. The ALJ concluded that Williams's past relevant work as a stocker-cashier did not require the performance of work-related activities precluded by his residual functional capacity. Moreover, the VE opined that there were other jobs in the economy, such as a retail sales clerk, that an individual such as Williams could perform.

Williams failed to meet his burden that he could not return to his past relevant work. Thus, the ALJ's decision that Williams was not disabled because he could perform his past relevant work is supported by substantial evidence. Even if this decision was not supported by substantial evidence, the ALJ concluded that there were other jobs in the national economy that Williams could perform.

Accordingly, having carefully reviewed the record, this Court finds substantial evidence supporting the ALJ's decision denying benefits to Williams. The ALJ's decision is affirmed. This Court further finds that Williams's complaint should be dismissed with prejudice.

Dated this 16th day of January 2007.

                                                    /s/ Harry F. Barnes
                                            Hon. Harry F. Barnes
                                            United States District Judge